Jeffery Lewis Hopkins
SID# 12595812
Snake River Correctional Minimum
777 Stanton Blvd.
Ontario OR, 97914

FILED 18 MAR '13 1158 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

|  |  |  |
|---|---|---|
| Jeffery Lewis Hopkins, SID # 12595812, | ) ) ) | Civil Action No.: _____  2:13-CV-0458 HU |
| Plaintiff, | ) ) | CIVIL RIGHTS COMPLAINT 42 USC § 1983 |
| v. | ) ) | |
| Steve Shelton, MD, Garth Grant Gulick, MD, Thomas Bristol, MD, SRCI TLC Committee, | ) ) ) ) ) | |
| | ) | Jury Demand over  $10,000.00 |
| Defendant(s). | ) ) | |

I.

Have you ever brought any appeal in a court of the United States while a prisoner? No.

    1. B. If your answer to A is yes, how many? N/A.

II.

A.   Place of Confinement: Snake River Correctional Institution

B.   Is there a prisoner grievance procedure in this institution? Yes.

C.  Have you filed a grievance? Yes.

D.  Is the grievance completed? Yes

### III. Parties

A.  Name of Plaintiff: <u>Jeffery Hopkins</u>

Security Identification Number (SID): 12595812

Address: SRCM, 777 Stanton Blvd. Ontario OR 97914

B.  <u>Defendant Steve Shelton, MD</u>, is employed by Oregon Department of Corrections as a Medical Director and chairman of the TLC Committee at Snake River Correctional Institution, Medical Services.

<u>Defendant Garth Grant Gulick, MD</u>, is employed by Oregon Department of Corrections as a General Physician and Member of the TLC Committee at Snake River Correctional Institution, Medical Services.

<u>Defendant Thomas Bristol, MD</u>, is employed by Oregon Department of Corrections as a General Physician and member of the TLC Committee at Snake River Correctional Institution, Medical Services

### IV.

### Statement of Fact

A.  Plaintiff's wrist was fractured on March 28th, 2011 while playing indoor soccer at Snake River Correctional Institution (SRCI). Dr. Gulick saw the plaintiff the same day and performed an X-ray. He sent the X-ray to Alabama

for review. Plaintiff requested to view the x-ray with Dr. Gulick. [1] He claimed there was no break and put plaintiff's wrist in an ace bandage. The ace bandage was taken away about 3 days later by Dr. Gulick.

B.     The pain continued and plaintiff saw Mr. Gulick on April 20th, 2011.[2] The plaintiff told Mr. Gulick that the wrist was not getting any better and painful, had limited range of motion and he could hear popping noises.

C.     On June 20, 2011 plaintiff filed a grievance [3] for failure to treat his broken wrist and failure to provide an MRI.

D.     On 6/29/11 plaintiff was told by Nurse Manager D. Wettlaufer that he was denied an MRI and that he would be rescheduled with Dr. Gulick. [4]

E.     On 7/6/11 plaintiff was seen by Dr. Gulick, who told plaintiff that if he asked for an MRI from the TLC Committee he could lose his job. [5] Plaintiff placed on a medical restriction at work.

F.     On 7/06/11 a wrist MRI was deemed "not medically necessary" by TLC committee.[6] Plaintiff filed a Grievance Appeal on 7/10/2011.

G.     On 9/8/2011 received response from Grievance from Dr. Shelton stating that the x-ray showed no bone injury, that TLC Committee met on 7/13/11 and felt no MRI was needed. [7]

---

[1] Heath Services Request, 3/30/11.
[2] Grievance Response Form (SRCI-2011-06-123), 6/29/11.
[3] (SRCI 2011-06-123)
[4] Grievance Response Form, 6/29/11.
[5] Jeffery Hopkins letter to Michael F. Gower, 6/6/2012, pg. 2 of 6
[6] TLC Request and Decision, 7/11/11.

H.     Plaintiff filed a Second Grievance Appeal on 9/16/11 and requested a second opinion. [8]

I.     On 9/21/2011 the TLC Committee considers plaintiff's request for a second opinion and x-rays. [9]

J.     Toward the end of Sept. 2011 additional x-rays were taken of the plaintiff's wrist which was sent to Imaging Center of Idaho. On 10/4/2011, Imaging Center of Idaho found a fracture of the scaphoid bone and avascular necrosis or dying bone. [10]

K.     On 10/13/2011 Dr. Bristol requests the TLC Committee to approve an orthopedist to see the plaintiff. [11] Michael F. Gower, Assistant Director, Operations Division of ODOC responds to first grievance appeal, and wrist was x-rayed a second time which indicated a fracture of the scaphoid. [12]

L.     Dr. Bristol then placed the plaintiff's wrist in a cast. Dr. Bristol told the plaintiff that he would have to wait 1-2 weeks to be put in a cast because SRCI did not have casting material. This was approx. 6 months after the initial injury. The cast was removed after 7 weeks and an x-ray was done which showed that

---

[7] Letter from Steve Shelton, Medical Director to Jeffery Hopkins, 9/8/2011.
[8] SRCI 2011.06.123A
[9] TLC Request, A. Hughes, RN, 9/20/11.
[10] Imaging Center of Idaho Findings by Dr. Johnson, D.O., 10/3/2011.
[11] TLC Request from Bristol, 10/13/11.
[12] See Michael F. Gower Response to Grievance Appeal, 10/26/2011.

there was no improvement. Dr. Bristol put the wrist back in cast for 5 more weeks. [13]

M.     On 12/20/2011 the TLC Committee approves plaintiff to receive an examination from an orthopedist. [14]

N.     On 12/26/2011 Imaging Center of Idaho provide a further examination showing that there is no improvement and that wrist remains fractured. [15]

O.     On 1/5/2012 Dr. Peterson MD refers the matter to Dr. Watkins to repair the right scaphoid fracture "ASAP". [16]

P.     Dr. Bristol placed the wrist back in a cast and requested for an orthopedic consult from the TLC Committee. The TLC Committee approved a consult and plaintiff was sent to St. Lukes Clinic on 2/15/12. [17]

Q.     Dr. Watkins discussed nature of injury with the plaintiff and ordered surgery to repair ligaments and restore blood flow to the dying wrist bones (bone graft and screw fixation). [18]

R.     On 2/17/2012, Dr. Bristol forwards an order to TLC Committee for an MRI and states "will need surgery bone graft". [19]

---

[13] See Jeffery Hopkins letter to Michael F. Gower, 6/6/2012, pg. 3 of 6; Jeffrey Hopkins inmate kyte to Ms. Hodge on 10/27/2011.
[14] TLC Request and Decision, 12/20/2011
[15] Imaging Center of Idaho Finding, 12/23/2012
[16] Provider's Returning Information, 1/13/2012
[17] TLC Request 1/13/2012
[18] Utilization Review states on MCS User Comments: "Injury May '11 – scaphoid non-union. Consult for Repair. Dr. Watkins provides a detailed diagnosis of the condition of the injury and plan for surgery. Report dated 2/15/2012. See also Provider's Returning Information, 2/15/2012.

S.    On 5/8/2012, the TLC Committee proposes wrist surgery with Dr. Watkins but is still vacillating on whether to approve it, requesting additional information on "if/how the fracture causes him problems". [20]

T.    Surgery is approved on 6/4/2012. [21]

U.    During surgery 3 wrist bones are removed, a dead scaphoid and 2 additional wrist bones (the bottom 3 bones of the wrist). There was no way to graft bone during surgery as previously suggested by Dr. Watkins. [22] There was also wrist bone that was shaved down due to irregular growth from the break. Plaintiff will prepare interrogatories. Progress notes have been requested from SRCI Central Medical to establish the facts alleged in U.

V.    Plaintiff will proceed to establish disability by contacting Social Security Administration requesting an examination from a government appointed medical professional.

## V.

### Plaintiff's Serious Medical Need

Plaintiff's broken wrist qualified as a serious medical need. The broken wrist continues to interfere with his daily activities. Plaintiff was medically ordered to not lift anything heavy at work. Plaintiff was not able to participate

---

[19] TLC Request, 2/17/2012. "will need surgery bone graft"
[20] TLC Request, 5/8/2012.
[21] Utilization Review, Decision Date 6/4/2012 , Provider's Returning Information "Patient will need surgery – explained in detail will call you for arrangements" , 6/6/2012.
[22] TLC Request, 2/17/12.

in exercise, struggled to carry his meal tray or carry heavy books. The wrist break was very painful and was visibly swollen, contorted and made a popping sound when moved. Plaintiff's wrist bone began to die because failure to properly set the break deprived the bone of blood and it began to die. Once an MRI was taken it could also be seen that plaintiff's ligament had also been torn. Plaintiff also suffered from chronic substantial pain due to delay and lack of treatment, which in and of itself qualifies as a serious medical need in the 8th Amendment context. Plaintiff's wrist will never fully recover from the damage caused by lack of timely medical treatment; he will be disabled for the rest of his life. Plaintiff's a laborer by trade, working in concrete and prior to coming to prison worked as a pizza delivery driver. Due to the permanent damage caused by failing to timely treat his broken wrist, his ability to earn a livable wage upon his release and perform jobs within his skill set is forever in jeopardy.

## Statement of the Claim

### Claim I

Garth Grant Gulick, MD in his individual and official capacity as General Physician at SRCI Medical and member of TLC Committee at SRCI was deliberately indifferent to plaintiff's serious medical need and right to be free from cruel and unusual punishment under the 8th Amendment as made

applicable to the States through the 14th Amendment, resulting wanton infliction

of pain and suffering and permanent disability due to the following particulars:

a.      Dr. Gulick failed to inquire into essential facts that were necessary to

make a professional opinion constitutes deliberate indifference to plaintiff's

serious medical need. Although Dr. Gulick performed an x-ray, the procedure

was performed too early to have yielded any result. Any reasonable physician

knows that an X-ray may not always show a break the day after an injury takes

place. X-ray's are to be taken a few days after the injury for a better exam.

Shortly thereafter, the plaintiff requested an MRI but this procedure was denied

by Dr. Gulick as a member of the TLC Committee. Decision of Dr. Gulick was

not based on an adequate exam and therefore he could not make an informed

judgment on whether plaintiffs needed an MRI or a cast for plaintiff's wrist.

b.      Dr. Gulick's delay in providing treatment resulted in substantial harm

and permanent injury constitutes deliberate indifference to plaintiff's serious

medical need. Dr. Gulick's failure to place plaintiff's fractured wrist in a cast in

a timely manner resulted in unnecessarily prolonged pain and suffering and

permanent damage to plaintiff's wrist bones some of which began to die from

lack of blood. It can be shown from Dr. Gulick's actions that he purposefully

acted to place the plaintiff in as much pain as possible. After providing the

plaintiff with an ace bandage, Dr. Gulick ordered the plaintiff to return the ace

bandage after only 3 days with no other method to keep his wrist stationary or

keep it from swelling, in spite of plaintiff's constant insistence that he be given

medical attention for his broken wrist.

c.     Dr. Gulick failed to request from ODOC sufficient medical materials

needed to place the plaintiffs wrist in a cast without causing an unreasonable

delay that resulted wanton infliction of pain and permanent disability

constitutes deliberate indifference to plaintiff's serious medical need. SRCI

Medical is plagued with disorganization and dysfunction. 7 months after

plaintiff broke his wrist; Dr. Bristol commented that he wanted to place

plaintiff's wrist in a cast but that SRCI Medical did not have any materials on

site to make a cast and that it would take two weeks to order the material.

d.     Dr. Gulick has failed to implement policies and procedures concerning

the treatment of broken bones in order to protect the plaintiff's right to be free

from cruel and unusual punishment resulting wanton infliction of pain and

permanent disability constitutes deliberate indifference to plaintiff's serious

medical need. Dr. Gulick performed the x-ray too soon on plaintiff's arm

despite any reasonable physician knows that an x-ray is to be taken a few days

after the break in order to make a clear exam. Also, by not ordering and not

having on site sufficient medical materials necessary to set broken bones at

SRCI, Dr Gulick couldn't set a broken arm or leg even if he wanted to,

compelling any unfortunate injured inmate to suffer for days while SRCI

Central Medical had the materials shipped from the other side of the State of Oregon.

## Claim II

Steve Shelton, MD in his individual and official capacity as Medical Director of ODOC Medical Services and member of TLC Committee at SRCI was deliberately indifferent to plaintiff's medical need and right to be free from cruel and unusual punishment under the 8th Amendment as made applicable to the States through the 14th Amendment due to the following particulars:

a.      Dr. Shelton failed to inquire into essential facts that were necessary to make a professional opinion constitutes deliberate indifference to plaintiff's serious medical need. Although Dr. Gulick performed an x-ray, the procedure was performed too early to have yielded any result. X-ray may not always show a break shortly after an injury takes place. It is reasonable that Dr. Shelton would know in his official and individual capacity that x-rays taken too early may not be able to detect a break. The plaintiff requested an MRI but this procedure was denied by Dr. Shelton as a leading member of the TLC Committee. Decision of Dr. Shelton was not based on an adequate exam and therefore he could not make an informed judgment on whether plaintiffs needed an MRI or a cast for plaintiff's wrist.

b.      Dr. Shelton's decision to delay in providing any treatment resulted in substantial harm and permanent injury constitutes deliberate indifference to

plaintiff's serious medical need. Dr. Shelton's failure to order plaintiff's fractured wrist to be placed in a cast in a timely manner resulted in unnecessarily prolonged pain and suffering and permanent damage to plaintiff's wrist bones some of which began to die from lack of blood. Had Dr. Shelton ordered plaintiff to received treatment, his decision overrides all other staff on the TLC Committee and plaintiff would have received treatment.

c.      Dr. Shelton failed to provide to SRCI sufficient medical materials needed to place the plaintiffs wrist in a cast without causing an unreasonable delay that resulted wanton infliction of pain and permanent disability and constitutes deliberate indifference to plaintiff's serious medical need. Under Dr. Shelton's leadership, SRCI Medical is plagued with disorganization and dysfunction. 7 months after plaintiff broke his wrist; Dr. Bristol commented that he wanted to place his wrist in a cast but that SRCI Medical did not have any materials on site to make a cast and that it would take two weeks to order the material.

d.      Dr. Shelton has failed to implement policies and procedures concerning the treatment of broken bones in order to protect the plaintiff's right to be free from cruel and unusual punishment resulting wanton infliction of pain and permanent disability and constitutes deliberate indifference to plaintiff's serious medical need. Dr. Shelton has not established an x-ray procedure based on well known medical science by allowing x-rays to be taken before they will be

useful. Also, by not providing medical materials necessary to set broken bones

at SRCI, Medical Staff at the facility under his management can not set broken

bones.

### Claim III

Thomas Bristol, MD in his individual and official capacity as General

Physician at SRCI Medical and member of TLC Committee at SRCI was

deliberately indifferent to plaintiff's serious medical need and right to be free

from cruel and unusual punishment under the 8th Amendment as made

applicable to the States through the 14th Amendment, resulting wanton infliction

of pain and suffering and permanent disability due to the following particulars:

a.     Dr. Bristol as a member of the TLC Committee sat on the three man

panel that decided not to provide medical treatment to the plaintiff. Dr. Bristol's

decision as a member of SRCI TLC Committee to delay in providing treatment

resulted in chronic substantial pain, substantial harm and permanent injury

constitutes deliberate indifference to plaintiff's serious medical need. Dr.

Shelton's failure to allow plaintiff's fractured wrist to be placed in a cast in a

timely manner resulted in unnecessarily prolonged pain and suffering and

permanent damage to plaintiff's wrist bones some of which began to die from

lack of blood. It was only after plaintiff complained, and continued pursuing his

grievances that Dr. Bristol acted to request another x-ray and a second opinion.

Plaintiff concedes that Dr. Bristol did act to place the plaintiff's wrist in a cast 7

months after the injury and after the fractured bone was already beginning to die. Placing the wrist in a cast for 7 weeks and then after an x-ray showing that there was no discernable improvement placed his wrist back in a cast another 5 weeks exacerbated the avascular necrosis of the fractured bone was a further delay from surgery and reduced the chances of a full recovery from any prospective surgery. The plaintiff had a second opinion in the community from a orthopedist that ordered plaintiff receive surgery to graft good bone on to the fractured bone to renew blood flow and fix a detached ligament. Once it was known by the medical community that SRCI medical staff were incompetent, Dr. Bristol acted to save face by placing the plaintiff wrist in a cast as if a fractured bone that had already begun to die and had no blood flow to it would somehow miraculously regenerate itself as if the plaintiff was an octopus or a lizard.

## VI. Relief

A.    Issue a declaratory judgment stating that:

1.    Dr. Gulick, Dr. Shelton and Dr. Bristol failed to inquire into essential facts concerning plaintiff's broken wrist that were necessary to make a professional opinion before denying treatment which constitutes deliberate indifference to plaintiff's serious medical need in violation of plaintiff's 8th Amendment right to be free from cruel and unusual punishment.

2.     Dr. Gulick, Dr. Shelton and Dr. Bristol delayed in providing treatment resulting in substantial harm and permanent injury constitutes deliberate indifference to plaintiff's serious medical need. Defendant's failure to place plaintiff's fractured wrist in a cast in a timely manner resulted in unnecessarily prolonged pain and suffering and permanent damage to plaintiff's wrist bones some of which began to die from lack of blood in violation of plaintiff's 8th Amendment right to be free from cruel and unusual punishment.

3.     Dr. Gulick, Dr. Shelton and Dr. Bristol's failure to request from ODOC sufficient medical materials needed to place the plaintiffs wrist in a cast without causing an unreasonable delay that resulted wanton infliction of pain and permanent disability constitutes deliberate indifference to plaintiff's serious medical need in violation of plaintiff's 8th Amendment right to be free from cruel and unusual punishment.

4.     Dr. Gulick, Dr. Shelton and Dr. Bristol has failed to implement policies and procedures concerning the treatment of broken bones in order to protect the plaintiff's 8th Amendment right to be free from cruel and unusual punishment resulting wanton infliction of pain and permanent disability constitutes deliberate indifference to plaintiff's serious medical need.

5.     Under Dr. Shelton's leadership, SRCI Medical is plagued with disorganization and dysfunction.

B. Award Compensatory Damages in the following amounts:

1.    $750,000 jointly and severally against defendant's Gulick, Shelton and Bristol for future earnings lost due to delay in medical treatment of a serious medical need that resulted in permanent damage and disability in violation of plaintiff's 8th Amendment right to be free from cruel and unusual punishment. The award amount is to compensate the plaintiff $30,000 a year until he is able to legally retire.

2.    $100,000 jointly and severally against defendant's Gulick, Shelton and Bristol for infliction of permanent physical injury and chronic substantial pain and loss of capacity to enjoy life generally.

3.    Future medical expenses incurred by the plaintiff in relation to the permanent injury, including doctor visits, any lawfully prescribed medication needed to manage pain and swelling as well as physical therapy.

4.    Provide adequate vocational training to enable plaintiff to earn a livable wage.

C. Grant such other relief as it may appear that plaintiff is entitled.


Signed this 6th day of _____March_____, 2013.


Jeff Hoy
(Signature of Plaintiff)

# CERTIFICATE OF SERVICE

**CASE NAME:** Jeffery Lewis Hopkins v. Steve Shelton MD , Garth Shelton MD, Thomas Bristol MD

**CASE NUMBER:** N/A

COMES NOW, Jeffery Lewis Hopkins, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at SRCM, 777 Stanton Blvd. Ontario OR 97914

That on the _11th_ day of _March_, 20 _13_, I personally placed in the Correctional Institution's mailing service A TRUE COPY of the following:

Forma Pauperis, Civil Rights Complaint, Plaintiff's Exhibits List, 3 Copies of Complaint for Defendant's

I placed the above in a securely enclosed, postage prepaid envelope, to the person(s) named at the places addressed below:

United States District Court District of Oregon
Office of the Clerk / Portland Division Office
1000 SW Third Ave.
Suite 740
Portland OR 97204-2902
Civil Desk (503) 326-8008

Jeffery Lewis Hopkins # 12595812
SRCM, 777 Stanton Blvd.
Ontario OR 97914